JOSEPH S. BODWELL ᴇᴛ ᴀʟ, PETITIONERS.
WILLIAM W. BRADSTREET, PETITIONER.

Suffolk, June, 1900.

*Flats — Boundary and Division Lines.*

These two cases involve the apportionment of some seventy acres of flats at Point Shirley.   The adjoining upland has been divided into building lots, the greater number of which, including nearly all of the shore lots, are owned in severalty by these two petitioners.   Point Shirley is a peninsula having a narrow neck and a very irregular shore line which forms coves, headlands and beach, ocean front and harbor front;   and the division of the building lots between the several petitioners is such that their respective shore frontages are far from symmetrical.

The two cases present some questions of division which seem not to have been specifically considered or settled in reported decisions, but it is obvious that the whole scheme of apportioning and dividing flats must be worked out on some consistent theory, and that as the value and use of the indented shore of Boston Harbor increases, it becomes of much importance that the division of flats and the establishment of lines in isolated individual cases should be so made that they will not clash with one another as the inevitable development proceeds.

The underlying principle is simply the adoption of such methods of division as will give to each parcel a line at low water proportional to its line at high water.   Walker *v.* B. & M. R. R., 3 Cushing 1.   Wonson *v.* Wonson, 14 Allen, 71. Tappan *v.* Boston Water Power Co., 157 Mass. 24.   The early cases are collated in the long and learned note of the

reporter in Commonwealth v. Roxbury, 9 Gray, 451, at page 522, and Mr. Crocker discusses the subject somewhat in his Notes on Common Forms, 4th ed. p. 54.

The rules deducible from the Massachusetts cases, briefly stated, seem to be as follows:

1. Where an ordinary channel extends through the flats within one hundred rods of high water the side lines of the flats run in the most direct course from the shore to such channel. Ashby v. Eastern R. R., 5 Met. 368. Walker v. B. & M. R. R., 3 Cushing at 22, end. Atty. Gen. v. Boston Wharf Co., 12 Gray, at 558. Tappan v. Boston Water Power Co., 157 Mass. 24.

Where there is no channel:

2. Except in a cove or off a headland the side lines run at right angles to the general course of the coast regardless of the direction of the side lines of the upland. Sparhawk v. Bullard, 1 Met. 95 at 106. Porter v. Sullivan, 7 Gray at 441. Wonson v. Wonson, 14 Allen at 79. Stone v. Boston Steel & Iron Co., 14 Allen, 230. The dicta to the contrary by Chief Justice Parker in Commonwealth v. Charlestown, 1 Pick. 180 at 184, and of Wilde J. in Dawes v. Prentice, 16 Pick. 435 ad fin. are not mentioned by either Mr. Crocker or Judge Gray, and are clearly ignored or overlooked in the later cases.

3. The general course of the coast is determined by a general, or in engineering phrase, " average " straight line, to the exclusion of unimportant curves, projections or indentations. Deerfield v. Arms, 17 Pick. at 46. Wonson v. Wonson, 14 Allen at 86.

In the absence of lines fixed by deed or agreement:

4. Off a headland the flats are to be divided by diverging lines. Beyond this there are no decisions, but it is obvious that these diverging lines must be the radii of the average curve of the headland. On no other basis can an entire coast line be proportionately divided.

5. In a shallow cove the side lines run at right angles to a base line drawn from headland to headland. Gray v. Deluce, 5 Cush. 9. Stone v. Boston Steel & Iron Co., 14 Allen, 230.

6. In a deep cove the low water line, or the line which must represent it, is divided in mathematical proportion to the line of ownership at high water, and the side lines run in the shortest course between such points of division. Deerfield v. Arms, 17 Pick. at 46. Wonson v. Wonson, 14 Allen at 86.

A. Where the line of low water lies wholly outside of a base line drawn from headland to headland, the base line should represent the low water line of ownership of the flats, and be so divided as to give to each owner of land on the shore the same proportion of the whole base line that he has of the whole shore line, the side lines running straight between such points of proportional division. Rust v. Boston Mill Corporation, 6 Pick. at 167. Wonson v. Wonson, 14 Allen at 85.

B. Where the mouth of the cove narrows and broadens again, a base line should be drawn across the narrowest part. Toward this base line proportionately divided as above provided the side lines should, of course, converge. Beyond the base line they should so diverge as to " give each owner his due proportion." Walker v. B. & M. R. R., 3 Cushing at 25. Wonson v. Wonson, 14 Allen at 86. But beyond this general statement the cases do not give much assistance. The rule seems, however, to be simple. The same principle may be again extended. The flats beyond the base line may be treated as a new cove, of which the base line represents the shore line and of which the low water line is either the actual low water line or the line which must represent it. This last may be made a new base line drawn across the narrowest part, if the cove again narrows, and the process again repeated. If the cove does not narrow again and actual low

water is still more than one hundred rods from shore, the line which must represent the low water line may be ascertained by deflecting lines from the ends of the base line at right angles to the nearest average straight shore line, or the radii of the nearest headlands extended thereto.

C. Where another deep cove adjoins the one in question, however, the adjacent angle should be divided between them. Wonson v. Wonson, 14 Allen at 83.

D. Where the line of low water falls in part within the base line, the proportional division can be ascertained from a new base line drawn between points established by extending to low water mark either lines at right angles to the nearest average straight coast line, or radii from the nearest headland, as the case may be. This line may then be divided in proportion to the ownership of the upland, and the side lines of the flats then run straight toward such divisional points for a distance of one hundred rods, or until they reach low water.

In all cases by " low water " is meant extreme low water. Sparhawk v. Bullard, 1 Met. 95 at 108. Sewall, etc., v. Boston Water Power Co., 147 Mass. 61.

7. All of these rules may be controlled, however, by lines established by the several owners by deed, agreement or such action as to create a presumption of such deed or agreement. Adams v. Boston Wharf Co., 10 Gray, 521. Atty. Gen. v. Boston Wharf Co., 12 Gray at 559.

8. The question of whether an owner of upland is entitled to flats in any direction other than toward deep water is happily not material to this case, because of the agreement between the parties by which the line between the flats of the petitioners and the respondent Lewis has been determined. It would seem that he is not so entitled, notwithstanding the apparently contrary opinion of Chief Justice Shaw. Note to Commonwealth v. Roxbury, 9 Gray at 522. Walker v. B. & M. R. R., 3 Cushing at 24. Henry v. New-

buryport, 149 Mass. 582. While it may be that the colony ordinance said nothing expressly about navigation, and that the owner of any particular upland may care nothing about it, still, since any method adopted for division should be one in accordance with which the whole coast could be fairly divided without conflict of lines, since most flats are so situated that the right to navigate over them is a right of very real and present value, in fact a " property " rather than a right, and since in most cases it is their nearness to a channel or deep water that makes them valuable, the better rule would seem to be that the side lines should extend only toward deep water.

Decree to be framed accordingly.